IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN J. LINK,                  )   Civil No. 3:11-cv-01025-JE
                                     )
               Plaintiff,       )
                                     )   OPINION AND ORDER
             v.               )
                                     )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,   )
                                     )
               Defendant.    )
_____)

    James S. Coon
    Swanson Thomas & Coon
    820 SW 2nd Avenue
    Suite 200
    Portland, OR 97204

        Attorney for Plaintiff

    S. Amanda Marshall, U.S. Attorney
    Adrian L. Brown, Asst. U.S. Attorney
    1000 S.W. 3rd Avenue, Suite 600
    Portland, OR 97204-2902

OPINION AND ORDER - 1

Mathew Pile
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

   Attorneys for Defendant

JELDERKS, Magistrate Judge:

  Plaintiff Steven Link brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Income Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act).

  For the reasons set out below, the Commissioner's decision is reversed and remanded for further proceedings.

## **Procedural Background**

  Plaintiff filed applications for DIB and SSI on March 18, 2007, alleging that he had been disabled since February 1, 2007.

  After his claims were denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

  On August 13, 2010, a hearing was held before ALJ Richard Say.  Plaintiff; Mark Link, Plaintiff's brother;  and Paul Morrison, a Vocational Expert (VE); testified at the hearing.

  In a decision filed on August 20, 2010, ALJ Say found that Plaintiff was not disabled within the meaning of the Act.

  On July 1, 2011, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  In the present action, Plaintiff challenges that decision.

OPINION AND ORDER - 2

**Background**

Plaintiff was born on June 23, 1964, and was 46 years old at the time of the hearing before the ALJ.  Plaintiff completed the eleventh grade.  He has past relevant work experience as a parts driver, mechanic helper, forklift driver, and groundskeeper.  He alleges that he is disabled because of a ring chromosome 21 defect, depression, anxiety, diabetes, high blood pressure, and attention deficit hyperactivity disorder (ADHD).

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

OPINION AND ORDER - 4

### ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on February 1, 2007.

At the second step, the ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder (ADHD), a learning disorder, personality disorder, borderline intellectual functioning, and a chromosome 21 anomaly to which those mental impairments were attributable.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He found that Plaintiff retained the capacity to work at all exertional levels, could read and follow specific detailed instructions and lists of duties, and had the following nonexertional limitations: He had a limited ability to write and use numbers; could understand, remember, and carry out only short, simple instructions and perform routine tasks; could have no interaction with the general public; could have only superficial interaction with coworkers; and needed specific, detailed instructions and lists of work tasks.  The ALJ found that  Plaintiff's statements concerning the intensity, persistence, and limiting effects of his impairments were not credible to the extent that they were inconsistent with this assessment.

Based upon the testimony of the VE, at the fourth step of his disability analysis the ALJ found that Plaintiff could perform his past relevant work as a parts driver, mechanic helper,

forklift driver, and groundskeeper.  Based on that conclusion, he found that Plaintiff was not

disabled within the meaning of the Act.

**<u>Standard of Review</u>**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  <u>Roberts v. Shalala</u>, 66

F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122 (1996).  The Commissioner bears the

burden of developing the record,  <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991), and

bears the burden of establishing that a claimant can perform "other work" at Step Five of the

disability analysis process.  <u>Tackett</u>, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); <u>see</u> <u>also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

<u>Andrews</u>, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at 1039-40.

### Discussion

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the testimony of lay witnesses, erred in failing to address a State Vocational Rehabilitation Division determination that he was "Most Significantly Disabled," improperly reversed the "proper manner of considering credibility," and erred in finding that Plaintiff was not wholly credible.

1. **Rejection of Statements of Lay Witnesses**

a.  **Lay Witness Testimony At Issue**

Mark Link, Plaintiff's brother, testified at the hearing before the ALJ, and six other lay witnesses submitted written statements describing Plaintiff's impairments and limitations. Plaintiff contends that the ALJ did not provide legally sufficient reasons for rejecting this testimony.  Though he argues that the ALJ did not provide adequate reasons for rejecting any of the lay witness testimony, Plaintiff asserts that the statements of ReNae True, Kerry McMullin, Terry Taylor, and Mark Link provided the "most relevant evidence," and confines his specific arguments to these witnesses.

**ReNae True**

ReNae True, one of Plaintiff's sisters, submitted a statement describing Plaintiff's mental limitations.  True stated that Plaintiff "has a difficult time in social situations.  He has no confidence in himself and . . . has no close friends . . . .  He has a very difficult time communicating and/or maintaining a conversation with other adults on an adult level."   She added that Plaintiff lost his concentration, cowered, became flustered, and gave up if anyone became stern with him or raised their voice.  True described her experience of hiring Plaintiff to work around her house as follows:

> If I gave him a verbal list of 5 things to do, he would be able to do about two of them the way I requested.  If I were to write it down step by step, he would be able to follow the instructions, but I would have to give them to him on a daily basis even if they were the same repetitive thing . . . he would require consistent verbal direction on a day to day basis.

She added that Plaintiff had difficulty understanding "acceptable hygiene," and that, because he could not express himself effectively, he had a history of unintentional "verbally inappropriate" behavior.

## Kerry McMullin

Kerry McMullin, another of Plaintiff's sisters, also submitted a written statement describing Plaintiff's limitations.  McMullin stated that Plaintiff needed help "prioritizing and understanding how to manage day to day living situations.  He frequently becomes so frustrated with these tasks that he ignores them until a family member steps in and helps him with it."  She added that:

> One of his biggest limitations is his inability to grasp new concepts without constant guidance and repetition, and a lot of patience from those around him.  I have watched Steven obtain job after job, although almost all of them are extremely short lived. Within a year or so of being hired, he is usually terminated.  Frequently the reason given has been because Steven is not able to understand that he must follow instructions and do what is asked of him.  He also lacks the ability to communicate clearly with his supervisors about his needs and what he does not understand.

McMullin stated that Plaintiff was always willing to work, but that he usually gave up before he completed tasks because he forgot, or did not understand, "how to do something."

## Terry Taylor

Terry Taylor, one of Plaintiff's former supervisors at Barkduster's, Inc., submitted a written statement describing Plaintiff's difficulties in a work setting.  Taylor stated that he had known Plaintiff for four years, and had supervised him "on a regular basis."  He asserted that

OPINION AND ORDER - 8

Plaintiff

had a problem retaining instruction.  He would listen carefully, was unable to
remember all the tasks given to him and had to be prompted as to what he had
missed getting done.  Steven was a hard worker, and it was clear that he wanted to
please me and do a good job, so he found it very frustrating when he would
continuously make mistakes or forget something.

Steven also had difficulty with judgment.  I could tell he really had tried to make a
good decision, but he was unable to realize outcomes and would misinterpret
instruction . . . it was easy for me to see it was not a lack of work ethic . . . but
clearly was a learning disability of some sort.  He also exhibited problems staying
on task, dealing with distractions and staying focused.  He would not realize when
he was off task.  I attempted to structure his responsibilities so that he was able to
do repetitive jobs and not have to be constantly learning new things, but that
resulted in him losing focus and getting off task.

Taylor added that Plaintiff had made numerous mistakes which were costly and difficult to

manage.

### Mark Link

Mark Link testified that Plaintiff suffers from an "inability to comprehend . . . simple

tasks, simple math, he has a hard time following basic instructions [and] doing a satisfactory

job."  He testified that he needed to redo "any job" that he had hired Plaintiff to do, or seen

Plaintiff do.  Mark Link stated that, even if he were given clear instructions, Plaintiff was unable

to do simple, repetitive tasks such as sweeping a patio or splitting wood.  He added that Plaintiff

could not "stay on task" and took offense if he was told that his work was unsatisfactory.  Mark

Link testified that, though Plaintiff wanted to work, he needed constant supervision and did not

know what to do if he was not given constant instructions.  He added that Plaintiff had difficulty

with comprehension and had trouble setting priorities.

b. **ALJ's Assessment of Lay Testimony**

The ALJ briefly summarized the statements of the lay witnesses, and concluded that

OPINION AND ORDER - 9

because these parties have a personal relationship with the claimant and lack the expertise and possibly the motivation to offer an objective or functional assessment, their statements regarding the claimant's symptoms and limitations are considered with caution.  It should also be noted that many of their statements regarding claimant's functional limitations are inconsistent with activities of daily living discussed above.

Plaintiff contends that the ALJ improperly rejected the lay witnesses' statements.  He argues that rejection of these statements on the basis of lay witnesses' "personal relationship" to him was improper, and that the activities of daily living to which the ALJ referred were not inconsistent with the witnesses' statements.

I agree.  Lay testimony as to a claimant's symptoms or as to how an impairment affects a claimant's ability to work is competent evidence which an ALJ must consider.  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1995); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).  An ALJ who rejects the testimony of lay witnesses must provide reasons for doing so that are "germane" as to each witness.  Id.

Plaintiff's relationship to the lay witnesses and the lay witness's lack of "expertise" were not germane reasons for rejecting the testimony at issue here: Friends and family members in a position to observe a claimant's symptoms and activities are competent to testify as to a claimant's condition.  Dodrill, 12 F.3d at 918 (citing Sprague v. Bowen, 812 F.3d 1226, 1232 (9th Cir. 1987)).  Disregarding testimony of a claimant's family and friends violates the requirement that lay testimony be considered, Sprague, 12 F.3d at 1232, and an ALJ cannot reject a witness's testimony on the grounds that he or she is a family member.  Smolen.v. Chater, 80 F.3 1273, 1288 (9th Cir. 1996).  Disregarding the testimony because the witnesses lacked the expertise to offer an objective  functional assessment was also improper: By definition all lay testimony is

given by witnesses who are not "expert," and ALJs are required to consider evidence from witnesses who are not expert medical sources.  See  20 C.F.R. § 404.1513(e)(2).

The ALJ's assertion that the lay witnesses'  "statements regarding claimant's functional limitations are inconsistent with Plaintiff's activities of daily living" discussed earlier in his decision is not accurate.  Those activities included vacuuming, mowing the grass, maintaining the yard, taking care of parents, running errands, taking care of pets, preparing meals, and "performing personal care."  Though Plaintiff had indicated that he carried out these activities, the ALJ cited no evidence that Plaintiff had performed them in a manner that was inconsistent with the lay witnesses' statements.  The mere fact that Plaintiff could perform certain activities of daily living is not a germane basis for rejecting lay testimony that Plaintiff could not function in a manner that would support employment.

The Commissioner acknowledges that Plaintiff's relationship with the lay witnesses and these witnesses' lack of expertise were not  proper bases for discounting the lay witnesses' statements.  He contends, however, that this error was harmless because Plaintiff's activities of daily living were a germane basis upon which to reject the lay witness testimony.  Plaintiff contends that the ALJ failed to provide an adequate basis for rejecting the lay witness testimony, and that his failure requires remand for an award of benefits.

Though I agree with the Plaintiff's contention that the ALJ failed to provide a legally adequate basis for rejecting the lay witnesses' testimony, I disagree with his contention that remand for an award of benefits is appropriate.  Plaintiff has cited, and I have found, no reported Ninth Circuit appellate decisions in which an action has been remanded for an award of benefits solely because an ALJ failed to provide germane reasons for rejecting lay testimony.

Plaintiff cites only <u>Smolen</u>, 80 F.3d at 1292, in support of his contention that the ALJ's failure to provide an adequate basis for rejecting lay witness evidence requires remand for an award of benefits.  However, in <u>Smolen</u>, the court concluded that, in addition to failing to provide legally sufficient reasons for rejecting lay witness evidence, the ALJ had also erred in rejecting the opinions of the Plaintiff's treating physicians, in rejecting the Plaintiff's own testimony, and in finding that the Plaintiff could work.  The court applied the three-part test typically used in the Ninth Circuit to determine whether an ALJ's error requires remand for an award of benefits or for further proceedings.  <u>Id.</u>, (<u>citations omitted</u>).  Under that test, remand for an award of benefits is appropriate if an ALJ has improperly rejected the plaintiff's evidence, the record is fully developed, and it is clear that a finding of disability would be required if the improperly rejected evidence were accepted.  <u>Id.</u>

Here, the ALJ failed to provide adequate reasons for rejecting evidence from lay witnesses and the record is fully developed, but it is not clear that the ALJ would have been required to find Plaintiff disabled if he had accepted that evidence.  Though the lay witnesses described Plaintiff as significantly impaired, other substantial evidence, which the ALJ cited and discussed, supported the conclusion that Plaintiff retained the functional capacity required to work.  Under these circumstances, remand for an award of benefits is not appropriate.

Though remand for an award of benefits is not appropriate, I am satisfied that this action must be remanded for reexamination of the lay witness testimony.  The lay witnesses appeared to have had substantial opportunities to observe and interact with Plaintiff, and their carefully articulated observations required a more thorough consideration than that reflected in the ALJ's decision.  On remand, an ALJ must either credit the lay witnesses' testimony or provide truly

"germane" and legitimate reasons its rejection.  If the ALJ accepts the testimony, Plaintiff's own

credibility, Plaintiff's RFC, and the ultimate question of disability must be reexamined as well.

2. **ALJ's Credibility Determination**

The ALJ found that Plaintiff had medically determinable impairments that could

reasonably be expected to cause some of the symptoms he alleged, but concluded that his

"allegations and statements concerning the intensity, persistence and limiting effects of

symptoms are not credible to the extent they are inconsistent with the . . . residual functional

capacity assessment."

**Credibility Analysis**

The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving ambiguities.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).  If

a claimant produces medical evidence of an underlying impairment that is reasonably expected to

produce some degree of the symptoms alleged, and there is no affirmative evidence of

malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility

determination.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996); <u>Gregor v. Barnhart</u>, 464

F.3d 968, 972 (9th Cir. 2006).  If substantial evidence supports the ALJ's credibility

determination, that determination must be upheld, even if some of the reasons cited by the ALJ

are not correct.  <u>Carmickle v. Commissioner of Social Security</u>, 533 F.3d 1155, 1162 (9th Cir.

2008).

The ALJ must examine the entire record and consider several factors, including the

claimant's daily activities, medications taken and their effectiveness, treatment other than

medication, measures other than treatment used to relieve pain or other symptoms, and "any other

factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7.

**Analysis**

a. **Method of Credibility Assessment and Specificity of Testimony Found Not Wholly Credible**

Plaintiff contends that the ALJ erred in reversing the proper order of credibility analysis by first assessing his RFC, and then simply concluding that any of his testimony that was inconsistent with that assessment was not credible. He also contends that the ALJ failed to specifically identify the testimony he found not credible, and failed to provide legally sufficient reasons supporting his credibility determination.

Inclusion of a finding that a claimant "is not credible to the extent his testimony is inconsistent with the RFC" has become a common practice in decisions denying applications for disability benefits. See, e.g., Tilton v. Astrue, 2011 WL 4381745, Slip. Op. at 30 n.5 (D. Or. 2011) (noting frequent appearance of statement in ALJ decisions). This recitation has appeared in most of the ALJs' decisions I have reviewed during the past several years.

There is no doubt that this sort of formulaic recitation is inappropriate and inadequate if an ALJ does not also provide sufficient reasons supporting a finding that a claimant is not wholly credible. See, e.g., Allen v. Astrue, 2012 WL 2921454 at 8 (D. Or. 2012) ("boilerplate" statement that claimant is not credible to extent testimony is inconsistent with RFC used inappropriately in many decisions; does not provide reasons required to discredit testimony). However, in most of the decisions that I have reviewed, this "boilerplate" statement has not described the ALJ's method of evaluating a claimant's credibility or explained why a claimant's testimony has been found less than wholly credible, but instead has simply indicated the degree

to which the ALJ has found that a Plaintiff's statements are not credible.  I have  concluded that, though this recitation may add little, its inclusion is not a basis for setting aside a credibility determination that is otherwise sound.

The threshold question here is whether the ALJ's reference to Plaintiff's RFC indicates that the ALJ first assessed Plaintiff's RFC, and then simply concluded that any of Plaintiff's assertions that were inconsistent with that assessment were not credible.  A careful review of the ALJ's decision supports the conclusion that the ALJ did not analyze Plaintiff's credibility in this manner, because the ALJ set out a number of reasons, independent of the RFC assessment, supporting his credibility determination.

The ALJ also identified the testimony that he found not credible with sufficient specificity.  He stated that Plaintiff's allegations that his impairments were too severe to allow him to perform substantial gainful activity, and that his functional limitations rendered him incapable of performing "all work activity," were not credible.  The ALJ specifically noted that Plaintiff alleged that he could not work because his depression, anxiety, diabetes, ring chromosome 21 defect, and ADHD caused poor concentration, made it difficult to remember assigned work tasks and instructions, required him to rely on written instructions, caused moodiness and irritability, and resulted in poor social skills.   In addition, in his discussion of the specific reasons he found Plaintiff less than wholly credible, the ALJ sufficiently identified the allegations that he  necessarily found were not adequately supported by the record.  For example, in his review of the medical evidence that he found was inconsistent with Plaintiff's allegations, the ALJ cited evidence in the medical record indicating that Plaintiff was able to socialize at work and maintain "good relationships with his wife and family that suggest his personality disorder is not as severe as he alleges."

b. **ALJ's Reasons for Credibility Finding**

Because Plaintiff produced medical evidence of an underlying impairment that was reasonably expected to produce some degree of the symptoms he alleged, and there is no affirmative evidence of malingering, the ALJ was required to provide "clear and convincing reasons" for his adverse credibility determination.

The ALJ satisfied that requirement here by providing a number of clear and convincing reasons supporting his credibility determination. These included the ALJ's reference to certain inconsistencies between Plaintiff's allegations concerning the severity of his impairments and evidence in the medical record. He noted that a psychological evaluation showed that Plaintiff had an average IQ and no deficits in attention, and that, despite his ADHD diagnosis, Plaintiff had strengths in some areas of mental function. The ALJ also noted that Plaintiff had engaged in substantial gainful activity for some time after he had been diagnosed with what he alleged was a disabling ring 21 chromosome anomaly.

These inconsistencies supported the ALJ's credibility assessment, because the inconsistency of a claimant's testimony with the medical records is a legitimate basis for discounting a claimant's credibility. Carmickle v. Commissioner, 533 F.3d at 1155, 1161 (9th Cir. 2008); SSR 97-6p (consistency of claimant's testimony "both internally and with other information in the case record" is significant indication of a claimant's credibility).

The ALJ also cited Plaintiff's noncompliance "with his medical or vocational treatment." He noted that Plaintiff missed "multiple appointments" with his treating physician, who told Plaintiff that he should find another health care provider if was going to continue to do so. The ALJ cited treatment notes from the Office of Vocational Rehabilitation indicating that Plaintiff

had "dropped out of sight" and "made no attempt to follow-up with vocational training . . . ."[1]

He concluded that these records indicated that Plaintiff did not have a "sincere interest in

achieving medical and functional improvement."

Failure to follow up with medical and vocational treatment is relevant in considering

credibility.  See SSR 96-7p at *7 (claimant's statements may be less credible if medical reports

or records show failure to follow treatment as prescribed); Burch v. Barnhart, 400 F.3d 676, 681

(9th Cir. 2005) (lack of treatment for mental condition legitimate consideration in assessing

credibility).  An ALJ may consider a claimant's resistance to treatment in evaluating credibility.

See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).

The ALJ concluded that Plaintiff's ability to work despite his diagnosed ring 21

chromosomal anomaly was inconsistent with his allegations of disabling impairments.  Records

indicate that Plaintiff  earned between $17,500 and $31,000 every year between 1999 and 2007,

and establish that Plaintiff engaged in substantial gainful activity for four years following his

diagnosis of a chromosomal anomaly.  The ALJ also cited evidence from Rowe Brothers

Rebuilders, which had employed Plaintiff in 2008 --after the alleged date of the onset of

disability--as inconsistent with Plaintiff's allegations of disabling impairments.  He noted that

Mike Kearney,  president of Rowe Brothers, had completed an employer questionnaire stating

that this employer had never noticed Plaintiff having difficulty doing his work.  The ALJ noted

that Kearney had reported that Plaintiff "did a great job of driving and picking up parts," but

disliked cleaning the shop and was terminated for his failure to perform that task.  He further

---

[1] Treatment notes from the Office of Vocational Rehabilitation indicated that Plaintiff's "motivation level" would need to be assessed if Plaintiff returned for services because, though he talked about wanting to work "that is as far as it goes."  Notes also indicated that Plaintiff tended to blame others for his "circumstances."

noted that Kearney had opined that Plaintiff's "only failures stemmed from unwillingness rather than inability."

These reasons are relevant in assessing Plaintiff's credibility. A claimant's previous ability to work despite an impairment is relevant in assessing the credibility of a claimant alleging that the impairment is subsequently disabling. See Gregory v. Bowen, 844 F.2d 664, 666-67 (9th Cir. 1988). The ability to maintain employment "with a fair amount of success" during a period of alleged disability supports the conclusion that a claimant's impairments are less severe than alleged. Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992). Certainly, a work attempt that fails because a claimant's impairments preclude satisfactory performance cannot support an adverse credibility finding. E.g., Lingenfelter v. Astrue, 504 F.3d 1028, 1038 (9th Cir. 2007). However, here the ALJ had a reasonable basis for concluding that Plaintiff's failure at Rowe Brothers, after the alleged onset of his disability, resulted at least in part because Plaintiff did not perform aspects of the job that he disliked.

Based upon a careful review of the ALJ's decision and the record, I conclude that the above are clear and convincing reasons which support the ALJ's credibility determination. However, in addition to these, the ALJ provided two reasons that did not support his credibility analysis. The first of these was the assertion that Plaintiff's "course of medical treatment and use of medication" was inconsistent with the severity of symptoms that Plaintiff alleged. The ALJ asserted that, despite his allegations, Plaintiff "received only conservative and routine treatment," and that there was no evidence that he took any medications that caused significant side effects. In his response to Plaintiff's opening memorandum, the Commissioner asserts that because the ALJ "did not cite to specific evidence in support of this reason or discuss what other treatment may have been available" he does not rely on this reason.

The second insufficient reason is the ALJ's assertion that Plaintiff's activities of daily living were inconsistent with "what he has alleged in his application and testimony." As noted in the above discussion of the ALJ's evaluation of lay witness testimony, these activities included vacuuming, mowing the grass, maintaining the yard, taking care of parents, running errands, taking care of pets, preparing meals, and "performing personal care."

In the discussion of lay witness testimony above, I concluded that these activities were not inconsistent with the lay witnesses' description of Plaintiff's limitations. I noted that the ALJ had cited no evidence that Plaintiff performed these activities of daily living in a manner that was inconsistent with lay witness statements concerning Plaintiff's impairments and limitations. This applies as well to Plaintiff's own statements concerning his impairments. Though Plaintiff testified that he engaged in these activities, he did not state that he did so in a manner that was inconsistent with his allegations of disabling impairments. For example, Plaintiff testified that he tended to "give up early" on tasks, forgot things quickly, needed one to two hours to prepare a meal, did very little housework, had substantial difficulty concentrating and staying focused on tasks, and that his wife thought he did too little. Under these circumstances, Plaintiff's activities of daily living do not provide a clear and convincing reason for discounting Plaintiff's credibility.

The ALJ's inclusion of two insufficient reasons does not invalidate his finding that Plaintiff was not wholly credible. Where, as here, substantial evidence supports the ALJ's credibility determination despite the inadequacy of some of an ALJ's reasons, the credibility determination will be upheld. See Carmickle 533 F.3d at 1162.

### 3. **Oregon Office of Vocational Rehabilitation Services' "Eligibility Determination"**

In 2008, Plaintiff sought rehabilitation services from the Oregon Office of Vocational Rehabilitation Services. In a letter dated July 29, 2008, Susan Hendry, a Vocational

Rehabilitation Counselor, informed Plaintiff that he was eligible for vocational rehabilitation services, and asked him to consider the type of work he was interested in and capable of performing.  A form sent with the letter, titled "Eligibility Determination," indicated that Plaintiff's "Disability Priority" was "Most Significantly Disabled - Priority 1."  The form identified certain impediments to employment, and stated that the Vocational Rehabilitation Counselor had determined that Plaintiff "requires and can benefit from VR services to prepare for, enter into, engage in, or retain gainful employment."

Plaintiff contends that this document constituted a "disability decision"  within the meaning of Social Security Ruling (SSR) 06-03p, which provides that a "disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." He further asserts that, even if the Eligibility Determination is not considered a "disability decision," it is an "other source" opinion that must be addressed as lay witness testimony.

I disagree.  The Vocational Rehabilitation Services' "Eligibility Determination" cannot be fairly characterized as a "disability determination" within the meaning of SSR 06-03.   That this form is not the kind of formal finding of disability made by the Agency is evident from the provision indicating the determination that VR services would help Plaintiff prepare for or retain gainful employment: This means that an individual may be characterized as  "most significantly disabled" even if he or she is presently employed and engaged in substantial gainful activity–a fact which would of course preclude a finding of disability under the Act.  The characterization of Plaintiff as "most significantly disabled" simply indicated that Plaintiff was deemed qualified to receive a certain level of vocational rehabilitation services.

As the Commissioner correctly notes, in his evaluation of Plaintiff's RFC, the ALJ here accounted for those "impediments to employment" identified in the notes in the Eligibility

OPINION AND ORDER - 20

Determination. The ALJ's RFC assessment noted restrictions in Plaintiff's ability to read, write, and use numbers; limited Plaintiff to tasks requiring short, simple instructions; and precluded interaction with the general public and allowed only brief interaction with coworkers. Under these circumstances, there was no conflict that the ALJ needed to resolve through a discussion of Counselor Hendry's opinion.

## Conclusion

The Commissioner's decision is REVERSED and this action is REMANDED to the Agency for further proceedings. On remand, an ALJ must reconsider the assessment of the lay witness testimony discussed above. An ALJ must either provide "germane" reasons for rejecting the testimony, or must credit the testimony and reconsider Plaintiff's own credibility, reassess Plaintiff's RFC, and reassess the question of disability in light of that testimony.

DATED this 16th day of October, 2012.


        /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge